B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Wilbur J. "Bill" Babin, Jr., in His Capacity as Chapter 7 Trustee of Martin Energy, LLC | DEFENDANTS<br>Crescent Drilling & Production, LLC, and Crescent Drilling Foreman, Inc. |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Patrick S. Garrity,<br>The Derbes Lawfirm, LLC,<br>3027 Ridgelake Dr., Metairie, LA 70002,<br>504-837-1230 | ATTORNEYS (If Known)<br>Benjamin W. Kadden<br>601 Poydras Street, Suite 2775<br>New Orleans, LA 70130<br>Main: (504) 568 1990 |
| PARTY (Check One Box Only)<br>□ Debtor  □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor  □ Other<br>☑ Trustee | PARTY (Check One Box Only)<br>□ Debtor  □ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor  □ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

The Trustee asserts causes of actions for: breach of contract; negligence; subordination under 11 USC 510; fraudulent conveyance under 11 USC 548; Louisiana Revocatory Action; recovery of avoided transfers under 11 USC 550; objections to proofs of claims under 11 USC 502; 11 USC 544

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer  [3]
☒ 14-Recovery of money/property - other  [4]

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☒ 81-Subordination of claim or interest  [2]

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)  [1]

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $5,000,000.00+ |

Other Relief Sought

Breach of Contract, Negligence, Revocatory Action

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Martin Energy, LLC | BANKRUPTCY CASE NO.<br>23-10898 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District of Louisiana | DIVISION OFFICE | NAME OF JUDGE<br>Meredith Grabill |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>September 30, 2024 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Patrick S. Garrity | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 1040 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT**
**EASTER DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: | * | Case No. 23-10898 |
| | * | |
| **Martin Energy, LLC** | * | Chapter 7 |
| | * | |
| Debtor | * | Section A |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| | * | |
| **Martin Energy, LLC** | * | |
| | * | |
| | * | |
| Plaintiff | * | |
| v. | * | Adv. No. 24-_____ |
| | * | |
| **Crescent Drilling & Production, Inc., and** | * | |
| **Crescent Drilling Foreman, Inc.** | * | |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

NOW INTO COURT, through undersigned counsel comes Wilbur J. "Bill" Babin, Jr., solely in his capacity as duly appointed trustee for the above captioned Chapter 7 estate ("Trustee" or the "Plaintiff") who files this Complaint. In support of this Complaint, the Plaintiff represents as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), (C), (H), (K) and (O).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

3.      Plaintiff herein is Wilbur J. "Bill" Babin, Jr., solely in his capacity as the Chapter 7 Trustee ("Trustee") for the estate ("Estate") of Martin Energy, LLC ("Debtor" or "Martin").

4.      Defendant Crescent Drilling & Production, Inc., ("CDP"), is a Louisiana corporation with its principal business establishment in Kenner, Louisiana.

5.      Defendant Crescent Drilling Foreman, Inc., ("CDF"), is a Louisiana corporation with its principal business establishment in Kenner, Louisiana.

6.      CDP and CDF (collectively "Crescent")[1] each provide different services to clients.  CDP provides services to the oil and gas industry from project commencement through completion. Those services include project management, production management, engineering, and accounting.   CDF  provides well-site supervisors for all phases of drilling, completion, workover, remedial work, and operations. The well-site supervisors include drilling and completion foremen, cased hole foremen, down hole tool specialists, mud/fluid specialists, project site security, and contract pumpers.

## FACTUAL & PROCEDURAL BACKGROUND

7.      An Involuntary Petition was filed under Chapter 11 of Title 11 of the United States Code in the above numbered and entitled bankruptcy proceeding on June 8, 2023 ("Petition Date"). The case ("Bankruptcy Case") was converted to Chapter 7 of Title 11 of the United States Code on or about August 3, 2023.  Babin was appointed interim Chapter 7 Trustee on or about August 3, 2023, and confirmed as permanent trustee at the 341 meeting of creditors on September 7, 2023.

---

[1] The term Crescent in this pleading means at least one of CDP or CDF.  Alternatively, it means CDP and CDF working in concert.

8. The Debtor is a Louisiana limited liability company that, on the Petition Date, owned interests in certain oil and gas wells. Based on information provided to the Trustee, the Debtor owned a 28.215972% working interest in the Haspel & Davis Well[2], and 59.353318% working interest in the A0392 Well[3] (collectively "Wells"). Prior to the bankruptcy, the Debtor was the designated operator on both wells. Both wells have been non-producing since April 2023. Pre-petition claims have been asserted in the Bankruptcy Case in excess of $5 million by the various vendors and service companies who did work on the Wells. Many of these creditors have asserted oil and gas liens (and/or privileges) under the Louisiana Oil & Gas Lien Act ("LOWLA").

### The Crescent/Martin Relationship

9. On or about June 21, 2021, CDP and the Debtor entered into a Master Service Agreement ("MSA") whereby CDP, along with its parent, subsidiaries, and affiliates (including CDF), agreed to provide services, labor, equipment, materials, supplies, and related services used in well operation, production and drilling in connection with the Debtor's construction and/or operations of properties and facilities for the exploration, development and/or production of oil and gas at rates and costs agreed upon by the parties. A copy of the MSA is attached as Exhibit "A".

10. Under the MSA, CDP was obligated to perform all services in a good and workmanlike manner in accordance with good engineering and/or oil field practices.

11. Paragraph 5.2 of the MSA states as follows:

> Contractor [CDP] agrees to pay all claims for labor, materials, services, and supplies furnished by or to Contractor, if any, in connection with its obligations under this Agreement including without limitation the Services and agrees to allow no third party lien or charge to be fixed upon any lease, well, land, or other property of Company [Martin]. Contractor agrees to indemnify, protect, Defend, and hold

---

[2] Serial No. 252857
[3] Serial No. 252405

harmless Company Group [which includes Martin] from and against all such claims, charges, and liens, excepting any claims or rights by Contractor as a result of Company's nonpayment of undisputed invoices regarding Contractor's Services performed pursuant to the Agreement.

12. Pursuant to Paragraph 6.0 of the MSA, CDP and CDF were independent contractors. As such, Martin was obligated to designate the services it desired to be performed and the ultimate results to be obtained, but the methods and details of performance were to be determined by Crescent. Through the MSA, Martin conferred authority to CDP and CDF to act on behalf of Martin. Martin had no control over the manner and method of performance by Crescent.

13. In June 2021, Crescent began using a bank account at Hancock Whitney Bank, account ending in 6707 ("Martin/Crescent Account"), for the financial operations related to services provided on Martin's behalf under the MSA. The account was in the name of "Crescent Drilling and Production, Inc. Client Services". Upon information and belief, only the Debtor's money was held in the Martin/Crescent Account. Neither CDP nor CDF contributed funds to the Martin/Crescent Account. CDP, an agent of Martin, had complete control of the funds in the Martin/Crescent Account and was able to decide which vendors were paid.

14. Working interest owners paid invoices for cash calls and joint interest billings directly to the Martin/Crescent Account, and funds generated from the sale of oil and gas were also deposited into the Martin/Crescent Account. Invoices from vendors and subcontractors were paid by Crescent from the Martin/Crescent Account. Martin did not have control over the Martin/Crescent Account and did not have the authority to dictate which invoices were paid. Essentially, CDP had functional economic control of the Debtor.

15. Between November 17, 2021, through July 6, 2022, CDF provided services, labor, equipment, materials, supplies, and related services used in the operation and production of the Wells.

16. The methods and details of performance for the drilling, completion and production operations of the Wells were determined by Crescent.

17. The care and control of all subcontractors hired to perform the drilling, completion and production operations were controlled by Crescent. As contract operator, the exclusive choice(s) to follow the outlined physical drilling, completion and production procedures rested with Crescent.

### The A0392 Well

18. Included in the services provided to Martin by Crescent was drilling the A0392 well. Based on the drilling of prior wells in the Empire Field, good engineering and/or oil field practices required the well to be gravel packed during drilling. Nonetheless, and even though the engineering proposal contained gravel packing as a procedure, Crescent chose to deviate from the engineering plan and not gravel pack the A0392 Well.

19. In January/February, 2022, Crescent caused the A0392 Well to "sand in" when it opened the choke or "yanked" and "pulled" on the choke on the well to increase production. The opening of the choke increased production to approximately 600 barrels a day. After a few days, the well became clogged. The loss of the well resulted from a failure to gravel pack the well, combined with opening the choke to a size too large. Without gravel packing, the A0392 Well was producing and should only have continued to produce an estimated 200-250 barrels a day to avoid the well sanding in. As a result of the sanding, the Debtor was required to recomplete the A0392 Well in the K4 Sand in September 2022. CDP's acts resulted in Martin incurring additional costs to recomplete the well, plus loss of profits due to greatly reduced production.

*The H&D Well*

20.    Crescent also managed the operation of the H&D Well.  Due to CDF's mismanagement of the H&D Well, production dropped from approximately 200 barrels per day to around 30 barrels per day.  The decrease in production was due to CDF adding an unnecessary gas lift, using faulty valves, and failing to replace the faulty valves.

*Transfers, Petitions, Liens, and Proofs of Claim*

21.    In the two years prior to the Petition Date, numerous transfers were made from the Martin/Crescent Account by CDP on behalf of the Debtor to itself ("CDP Transfers") and CDF ("CDF Transfers") (collectively "Avoidable Transfers").

22.    On November 3, 2022, CDP filed a *Verified Petition* against the Debtor in the 25th Judicial District Court[4] seeking recognition of its LOWLA lien and judgment for unpaid invoices totaling $133,274.06.

23.    CDP filed proof of claim #5 on August 18, 2023 ("CDP Claim") as a secured lien claim in the amount of $142,178.17.

24.    On November 3, 2022, CDF filed a *Verified Petition* against the Debtor in the 25th Judicial District Court[5] seeking recognition of its LOWLA lien and judgment for unpaid invoices totaling $337,335.46.

25.    CDF filed proof of claim #6 on August 18, 2023 ("CDF Claim") as a secured lien claim in the amount of $356,616.74.

---

[4] *Crescent Drilling & Production, Inc. v. Martin Energy, LLC,* 25th Judicial District Court, Parish of Plaquemines, Docket #67735, Division B.

[5] *Crescent Drilling & Production, Inc. v. Martin Energy, LLC,* 25th Judicial District Court, Parish of Plaquemines, Docket #67736, Division B.

**COUNT I**
**BREACH OF CONTRACT**

26. Made defendant to Count I is CDP.

27. The Debtor re-states and re-alleges the factual allegations plead in the paragraphs above and below in this Complaint as if fully set forth herein.

28. Under the MSA, CDP had the following contractual obligations:

   a. CDP warranted the performance of all Services in a good and workmanlike manner in accordance with good engineering and/or oil field practices.[6]

   b. CDP agreed to pay all claims for labor, materials, services, and supplies furnished by or to Crescent in connection with its obligations under the MSA, and not allow any third-party lien or charge to be fixed upon any lease, well, land, or other property of Martin..[7]

   c. Pay attorney fees. The indemnity provisions of the MSA also provided the recovery of attorney's fees and costs.[8]

29. CDP breached its obligations by:

   a. Failing to have funds in reserve from cash calls or other funding prior to performing work on behalf of Debtor; or,

   b. On information and belief, CDP overbilled the Debtor such that, in whole or in part, funds in reserve were insufficient to cover the expenses; or,

   c. Knowing the Debtor was undercapitalized, CDP hired subcontractors and incurred expenses that the Debtor had no ability to pay.

---

[6] See MSA, ¶3.3
[7] See MSA, ¶5.2
[8] See MSA, ¶¶8.0 – 8.3

30. Martin did not have control over the over the manner and method of performance by Crescent or the Martin/Crescent Account.

31. CDP's decisions to ignore the engineering proposal by not gravel packing the A0392 Well during drilling and opening the choke at the A0392 Well to allow production of approximately 600 barrels per day breached its obligations to follow good engineering and/or oil field practices.

32. CDP breached its obligations to Martin under the MSA by not paying third-party vendors for services rendered and allowing over $3 million of liens to attach to the Debtor's assets.

33. CDP's breach of contract caused Martin to sustain damages including but not limited to: loss of production; loss of higher pricing during the unnecessary shut-in months; loss of revenue; destruction of the formation at the K6 level, making further production from this well bore impossible; loss of pressure of the reservoir at the K4 level; liens being placed against the Debtor's assets; the Involuntary Case being filed; loss of all oil and gas reserves;; and attorney's fees.

34. Therefore, CDP is liable to the Estate for any and all damages sustained as a result of its breach of contract.

### COUNT II
### NEGLIGENCE

35. Made defendants to Count II are CDP and CDF.

36. The Debtor re-states and re-alleges the factual allegations plead in the paragraphs above and below in this Complaint as if fully set forth herein.

### *Allegations Regarding the A0392 Well*

37. CDF knew or should have known that gravel packing was required when drilling the A0392 Well.

38. CDF breached its duty relative to the A0392 Well when it failed to gravel pack the well at the time of drilling.

39. CDF also breached its duty relative to the A0392 Well when it opened the choke or "yanked" and "pulled" on the choke on the well to the point that the well was producing approximately 600 barrels a day, against expert engineering advice that it should only be producing at 200-250 barrels a day

40. Failure to gravel pack the well and the opening of the choke to allow production of approximately 600 barrels per day caused the structural damage to the formation.

41. CDF's breach of its duty to act as a reasonable contractor was the cause-in-fact and proximate cause of why the well became sanded-in at the K6 level and the loss of pressure of the well at the K4 level.

42. As a result, Martin sustained damages including but not limited to: loss of revenue; destruction of the formation at the K6 level, making further production from this well bore impossible; and loss of pressure of the reservoir at the K4 level. The sanding of the A0392 Well halted all production at the well, which ultimately resulted in the Involuntary Petition being filed and Martin's loss of all reserves.

### *Allegations Regarding the H&D Well*

43. CDF breached its duty relative to the Haspel and Davis Well by adding an unnecessary gas lift and using faulty valves.

44. CDF's use of the faulty valves and failure to replace them were the cause-in-fact and proximate cause of the Haspel and Davis Well going from producing around 200 barrels a day to around 30 barrels a day.

45. As a result, Martin sustained damages for loss of production, loss of higher pricing during the unnecessary shut-in months, and thereby loss of revenue due to the faulty valves and shut-in time, as well as additional unnecessary expenses for the addition of the unnecessary gas lift. The valve problems reduced and eventually halted all production at the well. The lack of production ultimately resulted in the Involuntary Petition being filed and Martin's loss of all reserves.

46. Therefore, CDF is liable to the Estate for any and all damages sustained as a result of its negligent actions.

**COUNT III**
**EQUITABLE SUBORDINATION OF CDP CLAIM**

47. Made defendant to Count III is CDP.

48. The Debtor re-states and re-alleges the factual allegations plead in the paragraphs above and below in this Complaint as if fully set forth herein.

49. The CDP Claim should be equitably subordinated under 11 U.S.C. 510(c).

50. CDP had functional economic control over the Debtor by virtue of the Martin/Crescent Account. It also determined the methods and details of performance for the drilling, completion and production operations of the Wells. As such, CDP owed a fiduciary duty to Martin.

51. CDP breached its fiduciary duty to Martin by:

   a. Failing to have funds in reserve from cash calls or other funding prior to performing work on behalf of Debtor; or,

   b. On information and belief, CDP overbilled the Debtor such that, in whole or in part, funds in reserve were insufficient to cover the expenses; or,

   c. Knowing the Debtor was undercapitalized, CDP hired subcontractors and incurred expenses that the Debtor had no ability to pay.

52. With knowledge that Martin was undercapitalized, CDP chose to pay itself and CDF.

53. The use of third-party vendors when it was aware that Martin was undercapitalized and did not have the ability to pay all vendors for their services, as well as CDP paying itself and CDF instead of other creditors was inequitable conduct by CDP. CDP's misconduct has resulted in injury to other creditors by not receiving payments. CDP's control over the Martin/Crescent Account created an unfair advantage for CDP and its related company CDF.

54. CDP was responsible for the production halting at the A0392 Well due to sanding and at the H&D Well due to the use of faulty valves. The sanding and faulty valves initially resulted in production halting and ultimately resulted in the filing of the Involuntary Bankruptcy and Martin's loss of the A0392 reserves.

55. Trustee alleges that equitable subordination of the CDP claim is consistent with the Bankruptcy Code.

56. Due to CDP's misconduct, the CDP Claim should be equitably subordinated under §510(c)(2) by transferring the lien identified in the CDP Claim to the Estate.

57. Alternatively, the CDP Claim should be equitably subordinated under §510(c)(1) to the claims of all creditors.

**COUNT IV**
**AVOIDANCE OF FRAUDULENT TRANSFERS**
**TO CDP UNDER 11 U.S.C. § 548(A)(1)(B)**

58. Made defendant to Count IV is CDP.

59. The Debtor re-states and re-alleges the factual allegations plead in the paragraphs above and below in this Complaint as if fully set forth herein.

60. CDP was responsible for the production halting at the A0392 Well due to sanding and at the H&D Well due to the use of faulty valves. The sanding and faulty valves initially resulted in

production halting and ultimately resulted in the filing of the Involuntary Bankruptcy and Martin's loss of the A0392 reserves.

61. CDP, as the Debtor's agent with complete control over the Martin/Crescent Account, made the CDP Transfers. On information and belief, some or all of the CDP Transfers were made after the sanding of the Wells.  Due to the damages caused by CDP's acts, Martin received less than reasonably equivalent value in exchange for the CDP Transfers.

62. The Avoidable Transfers occurred at a time when the Debtor

    a. Was insolvent or rendered insolvent as a result; or

    b. Intended to incur or believed that the Debtor would incur debts beyond its ability to pay.

63. With CDP controlling the Martin/Crescent Account and having knowledge of the Debtor's inability to pay vendors, the Debtor's agent, CDP, hired vendors and incurred debt on behalf of the Debtor knowing that Martin did not have the ability to pay those vendors.

64. CDP was the initial transferee of the Avoidable Transfers.

65. Pursuant to 11 U.S.C. § 548(a)(1)(B), the Debtor is entitled to avoid the CDP Transfers.

**COUNT V**
**AVOIDANCE OF FRAUDULENT TRANSFERS**
**TO CDF UNDER 11 U.S.C. § 548(A)(1)(B)**

66. Made defendant to Count V is CDF.

67. The Debtor re-states and re-alleges the factual allegations plead in the paragraphs above and below in this Complaint as if fully set forth herein.

68. CDF was responsible for the production halting at the A0392 Well due to sanding and at the H&D Well due to the use of faulty valves.  The sanding and faulty valves initially resulted in

production halting and ultimately resulted in the filing of the Involuntary Bankruptcy and Martin's loss of the A0392 reserves.

69. CDP, as the Debtor's agent with complete control over the Martin/Crescent Account, made the CDF Transfers. On information and belief, some or all the CDF Transfers were made after the sanding of the Wells. Due to the damages caused by CDF's acts, Martin received less than reasonably equivalent value in exchange for the CDF Transfers.

70. CDP, as the Debtor's agent with complete control over the Martin/Crescent Account, made the CDF Transfers in exchange for less than reasonably equivalent value.

71. The Avoidable Transfers occurred at a time when the Debtor

    a. Was insolvent or rendered insolvent as a result; or

    b. Intended to incur or believed that the Debtor would incur debts beyond its ability to pay.

72. With CDP controlling the Martin/Crescent Account and having knowledge of the Debtor's ability to pay vendors, the Debtor's agent, CDP, hired CDF and other third-parties, and incurred debt on behalf of the Debtor knowing that Martin did not have the ability to pay those vendors.

73. CDF was the initial transferee of the CDF Transfers.

74. To the extent that funds were paid from the Martin/Crescent Account to CDP and transferred to CDF to pay amounts due, CDF was also a subsequent transferee of certain CDF Transfers.

75. Pursuant to 11 U.S.C. § 548(a)(1)(B), the Debtor is entitled to avoid the CDF Transfers.

## COUNT VI
### AVOIDANCE OF FRAUDULENT TRANSFERS TO CDP
### UNDER 11 U.S.C. § 544 AND LA C.C. ART. 2036-2043

76.     Made defendant to Count VI is CDP.

77.     The Debtor re-states and re-alleges the factual allegations plead in the paragraphs above and below in this Complaint as if fully set forth herein.

78.     The CDP Transfers either caused or increased the Debtor's insolvency.

79.     CDP was the initial transferee of the CDP Transfers.

80.     Pursuant to 11 U.S.C. § 544 and Louisiana Civil Code Articles 2036-2043, the Trustee is entitled to avoid the CDP Transfers.

## COUNT VII
### AVOIDANCE OF FRAUDULENT TRANSFERS TO CDF
### UNDER 11 U.S.C. § 544 AND LA C.C. ART. 2036-2043

81.     Made defendant to Count VII is CDF.

82.     The Debtor re-states and re-alleges the factual allegations plead in the paragraphs above and below in this Complaint as if fully set forth herein.

83.     The CDF Transfers either caused or increased the Debtor's insolvency.

84.     CDF was the initial transferee of the CDF Transfers.

85.     Pursuant to 11 U.S.C. § 544 and Louisiana Civil Code Articles 2036-2043, the Debtor is entitled to avoid the CDF Transfers.

## COUNT VIII
### RECOVERY OF THE AVOIDED TRANSFERS UNDER 11 U.S.C. §550

86.     Made defendants to Count VIII are CDP and CDF.

87.     The Debtor re-states and re-alleges the factual allegations plead in the paragraphs above and below in this Complaint as if fully set forth herein.

88.     For the reasons set forth above, the Trustee is entitled to avoid the Avoidable Transfers.

89. CDP was the initial transferee of the CDP Transfers.

90. CDF was either the initial transferee of the CDF Transfers or the immediate transferee from CDP of certain CDP transfers.

91. Pursuant to 11 U.S.C. § 550, the Debtor is entitled to recover the value of the Avoidable Transfers.

**COUNT IX**
**OBJECTION(S) TO CDP CLAIM**

92. Pursuant to 11 USC §502 and Bankruptcy Rule 3007, made defendant to Count IX is CDP.

93. The Debtor re-states and re-alleges the factual allegations plead in the paragraphs above and below in this Complaint as if fully set forth herein.

94. If this Court grants Trustee relief under any of the above Counts as to CDP, the CDP Claim should be disallowed to the extent the CDP Claim is not subordinated or affirmatively recovered from CDP.

95. Alternatively, Trustee objects to the CDP Claim because it is subject to setoff for the damages caused by CDP through their negligence, breach of contract, or other causes of actions asserted in Counts I-VIII.

**COUNT X**
**OBJECTION(S) TO CDF CLAIM**

96. Pursuant to 11 USC §502 and Bankruptcy Rule 3007, made defendant to Count X is CDP.

97. The Debtor re-states and re-alleges the factual allegations plead in the paragraphs above and below in this Complaint as if fully set forth herein.

98. If this Court grants Trustee relief under any of the above Counts as to CDF, the CDF Claim should be disallowed to the extent the CDF Claim is not subordinated or affirmatively recovered from CDF.

99. Alternatively, Trustee objects to the CDF Claim because it is subject to setoff for the damages caused by CDF through their negligence, breach of contract, or other causes of actions asserted in Counts I-VIII.

## PRAYER FOR RELIEF

Wherefore, Wilbur J. "Bill" Babin, Jr., solely in his capacity as duly appointed trustee for Martin Energy, LLC, prays for the following relief:

a. For a judgment that CDP is liable to the Estate for any and all damages sustained as a result of its breach of the MSA.

b. For a judgment that Crescent is liable to the Estate for any and all damages sustained as a result of its negligent actions.

c. For a judgment to equitably subordinate the CDP Claim by transferring any lien securing the CDP Claim to the Estate, or alternatively, subordinate the CDP Claim to all unsecured creditors pursuant to 11 U.S.C. § 510(c).

d. For a judgment avoiding the CDP Transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

e. For a judgment avoiding the CDF Transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

f. For a judgment avoiding the CDP Transfers pursuant to 11 U.S.C. § 544 and LA C.C. Art. 2036-2043.

g. For a judgment avoiding the CDF Transfers pursuant to 11 U.S.C. § 544 and LA C.C. Art. 2036-2043.

h. For a judgment to recover the value of the avoided transfers pursuant to 11 U.S.C. § 550.

i. Alternatively, for a judgment disallowing the CDP Claim.

j. Alternatively, for a judgment disallowing the CDF Claim.

k.  That the Estate of Martin Energy, LLC be awarded, in addition to sufficient compensation for its damages, post-judgment interest, court costs, attorneys fees, and all other general, special, and equitable relief the Court deems just and proper.

Respectfully submitted,

BY: _/s/ Patrick S. Garrity_
ALBERT J. DERBES, IV, 20164
PATRICK S. GARRITY, 23744
THE DERBES LAW FIRM, LLC
3027 Ridgelake Drive
Metairie, Louisiana 70002
Telephone: 504.207.0920
Facsimile: 504.684.5507
E-mail: ajdiv@derbeslaw.com
E-mail: pgarrity@derbeslaw.com

And

FONDREN BLAIZE LAW FIRM
CHARLES BLAIZE, 25575
10101 Siegen Lane, Suite 4-A
Baton Rouge, LA 70810
Telephone: 225.810.4998
Facsimile: 225.810.4999
Email: cblaize@mfbfirm.com

_Counsel for Wilbur J. "Bill" Babin, Jr., Trustee_